IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-122-RJ

AARON MICHAEL ZURN, )
Plaintiff/Claimant, )
)
)
v. ) **ORDER**
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
)
Defendant. )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-27, DE-29] pursuant to Fed. R. Civ. P. 12(c). Claimant Aaron Michael Zurn ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on October 8, 2015,[1] alleging disability beginning September 17, 2014. (R. 21, 182–88). His claim was denied initially

---

[1] October 8, 2015 is the date listed on the application. (R. 182–88). However, the Disability Determination Explanation at both the initial and reconsideration levels as well as the ALJ decision state that Claimant's application was filed on September 29, 2015. (R. 21, 76, 93). The reason for this discrepancy is unknown. In any case, the discrepancy does not impact the court's decision in this case.

and upon reconsideration. (R. 76–109). A hearing before the Administrative Law Judge ("ALJ") was held on June 16, 2016, at which Claimant, represented by counsel; a witness; and a vocational expert ("VE") appeared and testified. (R. 45–75). On December 28, 2016, the ALJ issued a decision denying Claimant's request for benefits. (R. 18–39). Claimant then requested a review of the ALJ's decision by the Appeals Council, (R. 15), and he submitted additional evidence as part of his request. (R. 16, 363–65). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on April 28, 2017. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into her written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges the ALJ erred by failing to give proper weight to his treating providers' medical opinions and to the Department of Veterans Affairs ("VA") decision awarding Claimant a disability rating of one hundred percent. Pl.'s Mem. [DE-28] at 5–9.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 21). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since his alleged onset date. (R. 23). At step two, the ALJ determined Claimant had the following severe impairments: status post intracranial injury, posttraumatic stress disorder (PTSD), reduced hearing, and a history of alcohol abuse. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in his activities of daily living, social functioning, and concentration, persistence, and pace, with no episodes of decompensation. (R. 24–25).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations: he can never climb ladders, ropes, and scaffolds; he must avoid concentrated exposure to noise, fumes, odors, dusts, gases, other respiratory irritants, and workplace hazards; and he is limited to unskilled work with no interaction

---

2    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

with the public and no team-type interaction with co-workers. (R. 26). The ALJ found he cannot perform production-pace work but can perform goal-oriented work. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the evidence of record. (R. 27–28).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work in the military. (R. 38). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## V. DISCUSSION

### A. The Medical Opinion Evidence

Claimant contends that the ALJ erred by failing to give appropriate weight to the opinions of his treating providers. Pl.'s Mem. [DE-28] at 5. Specifically, Claimant makes three arguments: first, that the ALJ did not give appropriate weight to the opinion of E.M. Collins, a nurse practitioner; second, that the ALJ did not give appropriate weight to the opinion of Dr. Gobalez; and third, that the ALJ did not properly consider the opinion of VA treating providers that the Claimant was unfit for military duty. Pl.'s Mem. [DE-28] at 2, 7. The court disagrees with each of Claimant's arguments.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c).[3] In general, the ALJ should give more weight to the opinion of an examining

---

[3] The rules for evaluating opinion evidence for claims filed after March 27, 2017, are found in 20 C.F.R. § 404.1520c, but 20 C.F.R. § 404.1527 still applies in this case.

5

medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[4] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870,

---

[4] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

6

at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### 1. The Opinion of E.M. Collins, FNP-BC

Claimant first contends the ALJ improperly weighed the opinion of E.M. Collins ("Collins"), a VA nurse practitioner who evaluated Claimant on May 27, 2016. Pl.'s Mem. [DE-28] at 2, 7. Collins prepared a Mental Residual Functional Capacity Statement in which she opined that Claimant's pain and stress were constantly severe enough to interfere with the attention and concentration needed to perform simple work tasks, that he needed to lie down about two hours during an 8-hour work day, that he could only stand for forty five minutes or walk for ten minutes before needing to sit or lie down, that he could only sit for two hours and stand or walk for less than one hour, that he would need to take daily breaks to sit or lie down, that he would be off task for more than thirty percent of a work day, that he would be absent from work more than five days per month, and that he would be unable to complete a work day more than five days per month. (R. 352–55). Collins also opined that Claimant would be unable to obtain and retain work in a competitive work environment. (R. 355).

The ALJ stated that she accorded Collins's opinion little weight because "the extreme physical limitations described in this statement are unsupported by medical imaging, findings on physical examinations of the claimant, and the claimant's subjective allegations. The medical evidence of record shows only rare treatment of physical impairments." (R. 36). Indeed, here the record shows, as cited by the ALJ, an examination in April 2015 of Claimant's shoulders, knees, neck, headaches, back pain, and hips that indicated "no more than mild objective abnormalities" and a February 2016 assessment that Claimant could "lift and carry 50 pounds occasionally and 25 pounds frequently, sit for 6 hours in an 8-hour day, and stand and walk for up to 6 hours in an 8-hour day." (R. 28, 34). Claimant has extensive treatment records for PTSD and alcohol

7

dependence, but very little evidence speaks to his physical limitations. (R. 26–38). The ALJ thereby sufficiently explained that she discounted the opinion because it was not supported by evidence. See Craig, 76 F.3d at 590 (holding that an ALJ may give an opinion little weight if it "is not supported by clinical evidence [and] it is inconsistent with other substantial evidence.").

Additionally, Collins's opinion was noted on a check-box form, so the ALJ was entitled to give it less weight than a narrative opinion. *See Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings."); *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9–10 (E.D.N.C. May 24, 2011) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings). Here, Collins's form opinion is inconsistent with the evidence cited by the ALJ from Claimant's April 2015 and February 2016 evaluations of his physical limitations.

The ALJ sufficiently explained that Collins's opinion of Claimant's dire physical limitations was inconsistent with the medical evidence, and her decision to afford the opinion little weight was supported by substantial evidence. The ALJ did not err in discounting Collins's opinion.

### 2. The Opinion of Dominador Gobalez, M.D.

Claimant next argues that the ALJ improperly weighed the opinion of Dr. Gobalez, a VA-based provider who evaluated Claimant in June 2016. Pl.'s Mem. [DE-28] at 2, 7. Dr. Gobalez noted that Claimant's medications helped, his mood was overall improved, he exhibited good impulse control and judgment, he had insight, and he had no acute safety issues. (R. 2106). Dr.

8

Gobalez prepared a Mental Residual Functional Capacity Statement in which he opined that Claimant's mental impairments precluded work performance for fifteen percent or more of an eight hour work day and that he would be off task for more than thirty percent of a work day. (R. 356–58). Dr. Gobalez also stated that Claimant's prognosis was "fair to good based on one-time assessment today – will need continued medications/treatment." (R. 356). Dr. Gobalez wrote that his answers were "based on appointment evaluation for purposes of treatment only, not for disability evaluation." (R. 359).

The ALJ stated that she accorded the opinion little weight because "it is inconsistent with the generally unremarkable mental status examination documented by Dr. Gobalez," it "fails to document even subjective complaints by the claimant and his wife consistent with the extreme limitations described in this opinion," and it "was not to be used for purposes of disability evaluation." (R. 33).

The ALJ sufficiently explained why she discounted Dr. Gobalez's opinion. Like Collins's opinion, Dr. Gobalez's opinion "is not supported by clinical evidence [and] it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590. His statements regarding Claimant's ability to perform work tasks were inconsistent with his own observations of Claimant's improved mood, impulse control, judgment, and insight, as well as his opinion that Claimant would continue to improve with medication and that his prognosis was fair to good. (R. 33). Furthermore, Dr. Gobalez's opinion is inconsistent with a February 2016 evaluation conducted by Dr. Ken Wilson. (R. 33–34). Dr. Wilson found that Claimant "was capable of performing simple, routine, repetitive tasks in a low-stress, low production setting." (R. 34). The ALJ's decision to afford little weight to Dr. Gobalez's statements was supported by substantial evidence, and she did not err in discounting the opinion.

9

### 3. Claimant's Unfitness for Military Duty

Third, Claimant contends that the ALJ erred in giving little weight to his mental health treatment from February 2015 to October 2015 showing his unfitness for military duty. Pl.'s Mem. [DE-28] at 7. He argues that the ALJ improperly elevated the opinions of agency examiners over those treating physicians. *Id.* Generally, a treating provider's opinion ought to be given more weight than an agency examiner. 20 C.F.R. § 404.1527(c)(2). However, a treating provider's opinion may be discounted if it is inconsistent with other evidence. *Craig*, 76 F.3d at 590.

In February 2015, Claimant was evaluated by Robin Logan, Ph.D., a neuropsychologist. (R. 1113–21). Dr. Logan concluded that Claimant was unfit for military duty because of his attention and concentration difficulties stemming from his ADHD, PTSD, alcohol dependence, and sleep disturbance. (R. 1117–18).

The ALJ summarized Dr. Logan's evaluation and gave it "some weight," concluding that Claimant could not perform his past relevant work. (R. 29). She also concluded that Dr. Logan's observations "support the inclusion of a restriction to the performance of unskilled, non-production pace work." *Id.* The ALJ did not disregard Dr. Logan's evaluation; rather, she relied upon it in her formulation of the RFC, and the limitation to unskilled, non-production paced work is consistent with an unfitness for military duty. The ALJ appropriately considered Dr. Logan's opinion in accordance with 20 C.F.R. § 404.1527(c)(2).

In March 2015, Claimant was hospitalized for four days of inpatient psychiatric treatment. (R. 564). The same month, he was evaluated by Abby Saunders, Psy. D. Dr. Saunders opined that Claimant "is likely to have severe impairment in social and occupational functioning" because of his PTSD and Alcohol Use Disorder, but "symptoms of PTSD can wax and wane over time," so the severity of Claimant's impairment may change. (R. 473).

10

The ALJ stated that she gave Dr. Saunders's opinion "partial weight," noting that Dr. Saunders's use of the word "severe" was "not a vocationally relevant term" and that the ALJ's formulated RFC is limited in accordance with Claimant's social and occupational restrictions described by Dr. Saunders. (R. 30). Again, the ALJ does not discount Dr. Saunders's opinion; rather, she explains that the terminology used by Dr. Saunders carries a different meaning than it would in a disability analysis, and she notes that the RFC accommodates the restrictions observed by Dr. Saunders. The ALJ properly weighed Dr. Saunders's opinion.

The ALJ further discussed the medical evidence from May 2015 to January 2016 showing that Claimant was unfit for military duty. R. 29–32. In February 2016, Claimant was found eligible for medical retirement from the military. R. 32. The ALJ gave weight to the opinions of treating providers, concluding that Claimant could not perform his past relevant work in the military. R. 29. She also concluded that Claimant could manage light work, relying on the opinion of Heather Shibley, M.D., who opined that Claimant's symptoms would improve with treatment and that he could perform a low-stress job after completing a residential program. R. 31, 986–89. Claimant did complete a nine and a half week intensive residential treatment program focused on PTSD symptoms. R. 571. Thus, the ALJ's finding that Claimant cannot work as an infantryman but can perform light, low-stress work is supported by substantial evidence.

## B. The VA Disability Rating

Claimant contends that the ALJ erred in giving little weight to his 100% VA disability rating. Pl.'s Mem. [DE-28] at 5. The court disagrees.

In *Bird v. Commissioner*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d 337, 343 (citation omitted). "Thus, . . . in making a

11

disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

The ALJ acknowledged *Bird*, and she explained why she gave only partial weight to Claimant's disability rating:

> As explained in this decision, the medical evidence of record in this case supports reducing the VA disability rating to PARTIAL weight given the opinions of SSA's examiners, the claimant's alcohol abuse being in remission and the VA's treatment notes. Indeed, in assessing the weight to give to a VA disability rating, it is imperative to review and assess the evidence of record from the VA's own treatment notes. In this case, the overall evidence indicates the claimant is capable of work within the residual functional capacity given in this decision.
>
> Specifically, as discussed in more detail above, the evidence shows that the claimant has intermittently demonstrated mental symptoms of anxiety, hypervigilance, irritability, sleep disturbance, and attention and concentration difficulty. However, on many other occasions, mental status examinations revealed no objective evidence of these mental symptoms. Both the claimant and his wife reported that he showed significant improvement following the residential treatment program. Military and VA examiners concluded that claimant was unable to continue to perform his work in the military, but generally anticipated that his symptoms would improve in a less stressful setting. Even the claimant expressed on several occasions that he intended to further his education or seek vocational rehabilitation to pursue employment in another occupation after his military discharge.

(R. 37).

The ALJ fully considered Claimant's evidence of PTSD, including Claimant's testimony, the medical records from the VA, the VA disability rating, and the opinion evidence, and it is not the court's role to re-weigh evidence. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Further, the ALJ sufficiently explained her reasoning, concluding Claimant's PTSD symptoms had

12

improved with treatment. (R. 37). The ALJ imposed restrictive conditions in the RFC to account for Claimant's PTSD, requiring unskilled work in a low-stress environment, no interaction with the public, and no team-type interaction with co-workers. (R. 19). Thus, the ALJ's decision not to give substantial weight to the VA disability rating is supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-27] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-29] is ALLOWED, and Defendant's final decision is affirmed.

Submitted, this the 5th day of November, 2018.

Robert B. Jones, Jr.
United States Magistrate Judge